UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



STEVEN MICHAEL KILGORE,

Plaintiff,

-v-

COUNTY OF MONROE, et al.,

Defendants.

19-CV-0746V
ORDER

## INTRODUCTION

The *pro se* plaintiff, Steven Michael Kilgore, was a prisoner confined at the Monroe County Jail ("Monroe Jail") when he filed this action. This Court previously granted Kilgore permission to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it) and to amend his complaint to set forth cognizable claims. Docket Item 6. On December 16, 2019, Kilgore filed an amended complaint asserting claims under 42 U.S.C. § 1983 and alleging that the defendants violated his First and Fourth Amendment rights. Docket Item 8.

This Court has screened the amended complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). For the reasons that follow, one of the plaintiff's claims is dismissed under sections 1915(e)(2)(B) and 1915A, and others will be dismissed under those same sections unless he files an amended complaint correcting the deficiencies addressed below.

1

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation omitted). But leave to amend pleadings may be denied when any amendment would be "futile." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.    SCREENING THE COMPLAINT

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is

2

appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon,* 360 F.3d 73, 76 (2d Cir. 2004).

Kilgore has sued five defendants: Monroe County and four unidentified Monroe Jail corrections officers, referred to as "John Does #1-4." Docket Item 8 at 1. A liberal reading of the amended complaint tells the following story.

When Kilgore arrived at Monroe Jail on January 29, 2019, John Does #1-4 "forced [him] to strip naked" and conducted a search. *Id.* at 6. On February 12, 2019, John Does #1 and #2 again "forced [Kilgore] to strip naked . . . during a [f]acility[-]wide general search." *Id.* And on March 27, 2019, John Does #1 and #2 again "compelled [Kilgore] to strip naked . . . absent probable cause to believe contraband was present on [Kilgore], in the name of [f]acility [p]olicy." *Id.* at 7.

In addition, on September 20, 2019, Kilgore "was deprived the privilege to participate in the facility work program . . . in retaliation for having filed [his original complaint in this action]." *Id.* In a similar vein, "[f]rom the initial day [Kilgore] was incarcerated in the Monroe County Jail, [he] [has] been effectively denied access to the courts, due to the facility policy that do[es] not give indigent inmates free legal postage for outgoing mail, no typewriter, [and] no photocopies." *Id.* at 8. Kilgore adds, however, that after he grieved these court-access issues, "a resolution was reached" whereby he

"would only be allowed to [make copies of, or mail out, legal documents] if [he] agree[d] to allow the librarians [to] read it." *Id.*

Kilgore seeks injunctive and unspecified monetary relief. *Id.* at 9.

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.    Fourth Amendment Invasion-of-Privacy Claim

Kilgore alleges that the defendants violated his Fourth Amendment rights when they strip-searched him upon his arrival at Monroe Jail and twice afterwards.  The Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion," *Katz v. United States,* 389 U.S. 347, 350 (1967), and its protections extend to prisoners and pretrial detainees, *see Bell v. Wolfish,* 441 U.S. 520, 545, 559 (1979). Although "inmates do possess a limited right to bodily privacy, some aspects of that right must yield to searches for contraband, even random visual body-cavity searches, so that prison administrators may maintain security and discipline in their institutions." *Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992); *see also Florence v. Bd. of Chosen Freeholders,* 566 U.S. 318, 328 (2012) ("[C]orrectional officials must be permitted to

4

devise reasonable search policies to detect and deter the possession of contraband in their facilities." (citation omitted)).

To assess an inmate's claim that a strip search infringed upon his right to bodily privacy, courts "undertake a two-part inquiry: (1) First, the court must determine whether the inmate has 'exhibit[ed] an actual, subjective expectation of bodily privacy'; and (2) second, the court must determine 'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights.'" *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (quoting *Covino*, 967 F.2d at 77-78).

"In considering the second question, courts apply one of two separate but overlapping frameworks." *Id.* On the one hand, if an inmate challenges "a prison regulation or policy," courts ask whether the regulation is "reasonably related to legitimate penological interests." *Id.* at 57-58 (citation omitted). Four factors govern this inquiry:

> (i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv) whether there are reasonable alternatives available to the prison authorities.

*Covino*, 967 F.2d at 78-79 (citation omitted). "The burden is upon the prisoner to show that a challenged prison regulation is unreasonable." *Id.* at 79. On the other hand, if an inmate challenges "isolated search[es]," courts ask whether the search was "reasonable." *Harris*, 818 F.3d at 58. A different set of four factors governs that inquiry: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the

justification for initiating it, and [4] the place in which it is conducted." *Id.* (quoting *Bell,* 441 U.S. at 559).

As noted above, Kilgore alleges that some combination of John Does #1-4 strip-searched him on three occasions. *See* Docket Item 8 at 6-7. All three incidents seem to refer to searches undertaken pursuant to a facility-wide "regulation or policy," not "isolated incident[s]." But regardless of which framework applies, Kilgore has not adequately pleaded the elements of an unconstitutional search.

To be sure, "[a] strip search that involves a stranger peering without consent at a naked individual, and in particular at the most private portions of that person's body, is a serious invasion of privacy." *Harris,* 818 F.3d at 58 (quoting *Florence,* 566 U.S. at 344-45 (Breyer, *J.,* dissenting))). But a constitutional violation requires more—for example, "that the search was excessive, was needlessly prolonged[,] . . . was otherwise meant to intimidate, harass or punish him," *see Perez v. Ponte,* 236 F. Supp. 3d 590, 624 (E.D.N.Y. 2017), *report and recommendation adopted by* 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017), or was "conducted in the presence of unnecessary spectators," *see Harris,* 818 F.3d at 62.

Notwithstanding this Court's prior order explicitly advising Harris to explain how the strip searches at issue were "excessive," "needlessly prolonged," or "meant to intimidate, harass or punish him," or were "conducted in the presence of unnecessary spectators," *see* Docket Item 6 at 5-6 (citation omitted), Harris has not done so. Indeed, despite this Court's instruction, he still has not addressed the manner in which the searches were conducted, the place where they were conducted, or the justification for conducting them. *See id.* at 5. On the contrary, he simply has alleged that he was

strip-searched on arrival at the jail, during a "[f]acility wide general search," and "in the name of [f]acility [p]olicy." Docket Item 8 at 6, 9. He therefore has again failed to state a claim for invasion of privacy. Accordingly, Harris's Fourth Amendment claims are dismissed with prejudice.

### B.     First Amendment Retaliation Claim

Kilgore also has sued the defendants for retaliating against him for filing his original complaint. Docket Item 8 at 7-8.

To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam))). To prove the final prong, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff may rely upon circumstantial evidence to prove causation. *See Colon*, 58 F.3d at 872-73; *see also Espinal*, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.").

7

"Ordinarily a plaintiff can survive a motion to dismiss based on the pleadings so long as he has alleged facts, that if proven, would support a cause of action." *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order). "However, because of the 'ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care.'" *Id.* (quoting *Colon*, 58 F.3d at 872). "Because of the potential for abuse, '[courts] insist[ ] on a higher level of detail in the pleadings.'" *Id.* (quoting *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)). In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case [and] ought usually to be pursued with full discovery;" (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[, and] will support at least documentary discovery;" [or] (3) "a complaint which alleges retaliation in wholly conclusory terms [and] may safely be dismissed on the pleadings alone[. In the final category], the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."

*Id.* (quoting *Flaherty v Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Here, Kilgore filed his original complaint on June 6, 2019. Docket Item 1. He alleges that the defendants retaliated against him three months later—on September 20, 2019—by denying him access to a certain work program. Docket Item 8 at 7. He further alleges that "Sgt. Wise . . . told him several different reasons" for that denial and that all of these reasons "were debunked or proven to be false." *Id.*

Kilgore thus alleges both that the protected activity and adverse action were relatively close in time and that the defendants do not have a non-retaliatory reason for the adverse action. The amended complaint therefore alleges "facts giving rise to a

colorable suspicion of retaliation." *See Johnson*, 8 Fed. App'x at 144. But the claim may not proceed for the separate reasons addressed below.

First, Kilgore's retaliation claim may not proceed as pleaded against unspecified "jail staff." *See* Docket Item 8 at 7. If Kilgore wishes to hold "Sgt. Wise" liable for this activity, he must name "Sgt. Wise" in the "Caption of Action" (page one) and the "Parties to This Action: Defendant's Information Note" (page two). He also must allege the role "Sgt. Wise" played in denying him access to the work program. And he must provide enough information—*e.g.*, position or job title, shift and location worked, physical description, etc.—to enable Monroe County to identify "Sgt. Wise." *See Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam). Similarly, if he wishes to hold John Does #1-4 liable for this activity, he must (1) specify each individual's role in the retaliation—that is, what actions each officer personally took to retaliate against Kilgore—and (2) provide the same identifying information discussed above to enable Monroe County to identify each responsible officer.

Second, Kilgore's retaliation claim may not proceed as pleaded against Monroe County. A municipality cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead "three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)). "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates

9

who violate [persons'] civil rights." *Id.* (alteration in original) (second excerpt quoting *Batista*, 702 F.2d at 397).

Kilgore's complaint is silent as to whether the retaliation was undertaken pursuant to some policy or custom of Monroe County. Accordingly, the retaliation claim against Monroe County will be dismissed unless Kilgore files an amended complaint in which he asserts, if possible, factual allegations supporting a claim that the retaliation was undertaken pursuant to a policy or custom of Monroe County.

## C.   First Amendment Denial-of-Court-Access Claim

Kilgore also has sued the defendants for denying him access to the courts.

"It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997) (citations omitted). This right encompasses "paper and pen to draft legal documents . . . .and . . . stamps to mail them." *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). But the right is not "unqualified"; instead, for example, penal institutions must provide indigent inmates "a reasonably adequate amount of postage to present [their] claimed violations of fundamental constitutional rights to the courts." *Chandler v. Coughlin*, 763 F.2d 110, 114 (2d Cir. 1985) (citations omitted). "'[M]eaningful access' to the courts is the touchstone." *Bounds*, 430 U.S. at 823 (alteration in original) (quoting *Ross v. Moffitt,* 417 U.S. 600, 611, 612, 615 (1974)).

To state a denial-of-access claim, a prisoner must show that:

(1) he suffered an "actual injury," [*Lewis v. Casey*, 518 U.S. 343, 349 (1996)], (2) to a non-frivolous legal claim, (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement. *Id.* at 352-54. Actual injuries include the dismissal of a complaint for a technical deficiency that would have been cured with appropriate legal facilities, or that a prisoner was "stymied" from bringing an arguably actionable claim by the "inadequacies of the law library." *Id.* at 351.

*Kaminski v. Semple*, 2019 WL 6904145 (2d Cir. Dec. 18, 2019) (summary order); *see also Zigmund v. Wynne*, 189 F.3d 462 (2d Cir. 1999) (summary order) ("In order to allege the type of injury needed to state a claim for violation of his right to court access, [a civil plaintiff must] allege . . . that he was unable to file a complaint because of inadequacies in the prison's legal facilities or that the complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." (citation omitted)).

Here, Kilgore alleges that he generally has been denied access to the courts by Monroe Jail's "policy" of "not giv[ing] indigent inmates free legal postage for outgoing mail," access to a typewriter, or the means to make photocopies. Docket Item 8 at 8. Kilgore adds, however, that after he grieved these issues, "a resolution was reached" whereby he could make copies of, or mail out, a legal document "if [he] agree[d] to allow the librarians [to] read it." *Id.*

Kilgore's allegations are insufficient to plead a denial-of-access claim. First, as discussed above, Kilgore has not pleaded any underlying non-frivolous claims that he wanted to bring but could not. Second, he has not pleaded any "actual injury" from the alleged denial. *Id.* That his papers were inspected by the librarian does not, without more, suggest that Monroe Jail denied him access to the courts.

Indeed, if Kilgore is claiming denial of access in this action, then his claim fails because he ultimately was able to file his papers. Even reading Kilgore's complaint liberally to allege that his efforts in this action were *delayed* by the defendants' inspection requirement does not carry the day. "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *see also Soto v. Meachum*, 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991) (dismissing the plaintiff's denial-of-access claim where his "papers were inspected in order to assess the appropriate photocopying charge" because the plaintiff neither "den[ied] that his materials were returned to him promptly after inspection" nor "alleged that he was unable to file a court action or . . . missed a court-imposed deadline as a result of [the] defendants' actions").

Nevertheless, because a liberal reading of the complaint suggests that Kilgore may be alleging that he was unable to bring *other* claims—either in this Court or before another tribunal—he may amend his complaint. *See* Docket Item 8 at 8 (alleging that the Monroe Jail policy prevented Kilgore from "stay[ing] informed about the 42 U.S.C. [§] 1983 that had previously been filed, *and any future ones as well*" and from "challeng[ing] a C.P.L. 190.10, due to the librarian's absence" (emphasis added)). Accordingly, Kilgore is granted leave to amend his complaint to plead, if possible, factual allegations supporting a claim that Monroe Jail's policies governing inmates' access to materials needed to prepare and mail legal documents has resulted in his not being able to bring a non-frivolous legal claim.

## CONCLUSION

For the reasons discussed above, Kilgore's claim for invasion of privacy is dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his claims for retaliation and denial of court access will be dismissed under those same sections unless he files an amended complaint **within 45 days of the date of this order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Kilgore is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

## ORDER

In light of the above,

IT IS HEREBY ORDERED that Kilgore's claim for invasion of privacy is dismissed; and it is further

ORDERED that Kilgore is granted leave to file a second amended complaint **within 45 days of the date of this order;** and it is further

ORDERED that if Kilgore does not file a second amended complaint addressing the deficiencies addressed above **within 45 days of the date of this order**, the complaint will be dismissed without further order and the Clerk of Court shall close this case; and it is further

ORDERED that if the complaint is dismissed because Kilgore does not file an amended complaint, this Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.


SO ORDERED.

Dated:     March  //  , 2020
           Buffalo, New York


LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE